UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00024-GNS-HBB

NATIONAL UNION FIRE INSURANCE                                                    PLAINTIFF
COMPANY OF PITTSBURGH, PENNSYLVANIA

v.

BOWLING GREEN RECYCLING
LLC, et al.                                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DN 52)[1], and Defendants' Motion for Summary Judgment (DN 53). For the reasons outlined below, Plaintiff's Motion for Partial Summary Judgment on its claim of conversion is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion for Summary Judgment is **DENIED**.

### I.     STATEMENT OF FACTS AND CLAIMS

Belden, insured by Plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union" or "Plaintiff"), is a corporation that designs, manufactures, and markets signal transmission solutions for broadcast, enterprise, and industrial applications. (Am. Compl. ¶ 13). At its Tompkinsville and Monticello, Kentucky, plants during the relevant time period, Belden received processed copper and fabricated it into cable. (Am. Compl. ¶ 14; Pl.'s Mem. Supp. Mot. Summ. J. 3, DN 52-1 [hereinafter Pl.'s Mem.]).

---

[1] Although Plaintiff's motion is styled as a "Motion for Summary Judgment," it asks the Court for summary judgment only as to Count I of Plaintiff's Complaint and First Amended Complaint, which contain Plaintiff's conversion claim. (Compl. ¶¶ 21-29, DN 1; Am. Compl. ¶¶ 22-30, DN 28). The Court will therefore construe Plaintiff's motion as a motion for partial summary judgment, and will refer to it as such.

Beginning as early as December 2004 and continuing through 2014, Jimmy Pruitt ("Pruitt"), a Belden manufacturing manager, stole 254 reels of copper from Belden and resold them to three of the defendant entities[2] as "scrap." (Am. Compl. ¶¶ 15-17, 19; Pl.'s Mem. 3-5).[3] By the time Belden discovered the scheme, Pruitt had stolen $1,935,272.15 worth of copper, and one or more Defendants had resold the copper for a profit. (Am. Compl. ¶ 18, 20; Pl.'s Mem. 5). As Belden's insurer, National Union reimbursed the loss and was assigned Belden's claims. (Am. Compl. ¶ 21; Pl.'s Mem. 5).

National Union then filed this subrogation action against Defendants. Defendants concede that they purchased the stolen copper from Pruitt and that they knew the copper originated from Belden, but maintain that they did not know Pruitt had stolen the copper. (Defs.' Mem. 1-2; Pl.'s Mem. 4-5).[4]

---

[2] The relationship of the defendant entities is addressed below. Filings made jointly by Bowling Green Recycling, LLC, Bowling Green Recycling II, LLC, Bowling Green Recycling of Warren County, Inc., Bowling Green Recycling of Lauren County, Inc., and SML Properties, LLC (collectively, "Defendants") will be distinguished from references to specific entities.

[3] Pruitt has since been indicted for the theft of the copper from Belden and pleaded guilty to his criminal charges. (Defs.' Mem. Supp. Mot. Summ. J. 4, DN 53-1 [hereinafter Defs.' Mem.]; Pl.'s Mem. 4).

[4] To underscore this argument, Defendants point to two instances in which Pruitt produced correspondence on Belden letterhead and signed by the plant manager, the fact that some of the wire was "tagged" as being returned (corroborating Pruitt's representations to Defendants that the copper was scrap), "several occasions" that Pruitt informed Defendants that their bids on the copper had been outbid (substantiating Defendants' belief that Pruitt was acting as a broker, commonplace in the recycling industry), and two forged Certificates of Ownership Pruitt produced to Defendants. (Defs.' Mem. 2-3; Defs.' Mem. Supp. Mot. Summ. J. Ex. A, at 1, DN 53-2; Defs.' Mem. Supp. Mot. Summ. J. Ex. B, at 1, DN 53-2 (together, "Certificates of Ownership")). Defendants further note that after July 12, 2012—the date upon which KRS 433.904 went into effect—they complied with the statute's requirements, which are aimed at regulating the secondary recycling industry, by reporting all purchases of restricted metals to the sheriff of the county where the transaction took place as well as the police department where the secondary metals recycler is located. (Defs.' Mem. 3).

## II.     JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff argues that Defendants are liable for conversion under Kentucky law, regardless of whether Defendants knew the copper was stolen. (Pl.'s Mem. 2-3). Conversion is an intentional tort, defined as "the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014) (citations omitted). In Kentucky, a claim of conversion requires proof of seven elements:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Meade v. Richardson Fuel, Inc.*, 166 S.W.3d 55, 58 (Ky. App. 2005) (quoting *Ky. Ass'n of Counties All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)). Defendants dispute whether Plaintiff has met its burden of proof only as to the fourth and sixth elements. (Defs.' Resp. Pl.'s Mot. Summ. J. 3-6, DN 55 [hereinafter Defs.' Resp.]).

First, Defendants dispute the intent to interfere element. While a conversion claim requires that Defendants "intended to interfere" with Plaintiff's possession of the copper, the intent required is merely "the intent to exercise control over the property." *Jasper v. Blair*, 492 S.W.3d 579, 582 (Ky. App. 2016) (internal quotations omitted) (quoting 13 David J. Leibson, *Kentucky Practice – Tort Law* § 8.2 (2015 ed.)). The question is therefore whether Plaintiff has established that Defendants intended the act which resulted in their control over the copper. *See id.* at 583.

In *Jasper*, the Kentucky Court of Appeals reviewed a directed verdict as to liability for the plaintiff, where the plaintiff alleged conversion of her diamond ring that was sold to the defendant by a third-party thief. The court upheld the directed verdict, as the defendant had testified at trial "that he had agreed to purchase the diamond ring from [the thief]. Thus, a reasonable juror could only find that [the defendant] intended to purchase the ring, thus satisfying element (4) of the tort of conversion." *Id.* at 583.

In this case, Defendants have similarly admitted they intended to purchase the copper from the thief, Pruitt, and that they exercised further control over the copper by reselling it. Accordingly, this element has been proven as a matter of law.

In addressing the element of legal cause of loss, Kentucky relies on the substantial factor test set forth in Comment (a) of Section 431 of the Restatement (Second) of Torts, which "essentially provides that an 'actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm.'" *Id.* at 583 (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91-92 (Ky. 2003)). This test asks whether the defendant's conduct had "such an effect in producing the harm as to lead reasonable men to regard it as a cause . . . ." *Pathways*, 113 S.W.3d at 92 (quoting Restatement (Second) of Torts § 431 cmt. a). In *Jasper*, the Kentucky Court of Appeals found that it was "clear that [the defendant's] purchase of the diamond ring was a substantial factor in causing [the plaintiff] to suffer loss of the ring . . . ." *Jasper*, 492 S.W.3d at 583.

Defendants argue that Pruitt and his accomplices, not themselves, represent the legal cause of Plaintiff's loss, but cite no case law supporting this proposition. (Defs.' Resp. 4-6). Here, as in *Jasper*, while the thief is obviously a substantial factor in plaintiff's harm, it does not follow that the purchaser of stolen goods is *not* a substantial factor. Defendants argue, in the

5

alternative, that the actions of Pruitt and his accomplices "certainly . . . create[] a genuine issue of material fact as to who was the legal cause of Plaintiff's loss." (Defs.' Resp. 5-6). Defendants neither cite to any case law for this premise, nor point to specific evidence in the record proving the existence of a genuine dispute of fact for trial. *See Anderson*, 477 U.S. at 247-48. As Defendants have conceded their purchase and resale of the copper, Plaintiff has likewise proven this element as a matter of law.[5]

Because the Court has determined that Defendants are liable for conversion, the Court must address the issue of Plaintiff's damages. "[T]he measure of damages in conversion is the value of the property at the time of conversion . . . ." *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. App. 1990) (citing *Nolin Prod. Credit v. Canmer Deposit Bank*, 726 S.W.2d 693 (Ky. App. 1986)). The only evidence in the record regarding damages is the expert report prepared by an accounting firm calculating the amount of the converted cooper to be $1,935,272.15. (Pl.'s Mem. 5; Pl.'s Mem. Supp. Mot. Summ. J. Ex. 5, at 4, DN 52-6). Because Defendants have failed to raise a question of fact relating to damages, Plaintiff has established that it suffered damages in the amount of $1,935.272.15.

Regarding apportionment of these damages, the Court ordered supplemental briefing by the parties. (Order, DN 58). The Court agrees with Plaintiff's contention that the defendant recycling businesses—Bowling Green Recycling, LLC; Bowling Green Recycling, Inc.; Bowling

---

[5] As Kentucky's highest court has explained, "[t]he purchaser of stolen chattels acquires no title, however innocent he may be, and an innocent holder appropriating or disposing of stolen property is liable for conversion." *Urban v. Lansing's Adm'r*, 39 S.W.2d 219, 221 (Ky. 1931). Defendants' insistence in their lack of knowledge that the copper was stolen is immaterial, as is their argument regarding their compliance with KRS 433.904, which provides no safe harbor to conversion claims. As discussed below, Defendants' only remaining potential defense—that Plaintiff's claim is barred by the statute of limitations—is likewise meritless.

6

Green Recycling II, Inc., and Bowling Green Recycling of Warren County[6]—are essentially one and the same business. (Pl.'s Suppl. Br. 2-9, DN 60). No arm's-length transaction was undertaken when the name of the recycling business changed, and the business continued to operate on the same premises and with the same employees. (Lofton Dep. 25:18-27:12, 179:4-16, July 12, 2016, DN 52-5). Given this identity of parties, the Court finds that the recycling businesses are subject to successor liability and are liable for Plaintiff's damages. *See Am. Ry. Express Co. v. Kentucky*, 228 S.W. 433, 438 (Ky. 1920) (holding that "where one corporation takes over the assets of another corporation, without paying to it any consideration therefor," the corporation takes on the prior entity's liabilities). Plaintiff did not, however, point to sufficient evidence in the record that supports its claim that because SML Properties was "created for the illicit purpose of escaping liability for Lofton's prior crimes[,]" such liability should extend to SML Properties. (Pl.'s Suppl. Br. 3, 10-11). To the contrary, the record indicates that SML Properties was the entity which owned the premises where the recycling business was located and that the property was transferred to SML by James Lofton and his wife, the principals in the other Defendant entities. The Court therefore declines to extend this decision to SML Properties.

B. **Defendants' Motion for Summary Judgment**

Defendants have also moved for summary judgment, on the theory that: (1) Plaintiff's claims are barred by the statute of limitations; and (2) Plaintiff failed to establish a prima facie case of its claims. (Defs.' Mem. 4-10). As discussed above, Plaintiff has established its claim of conversion sufficiently to fulfill the summary judgment standard. The Court will therefore briefly discuss Defendants' remaining arguments.

---

[6] Defendants state that they have no knowledge of an entity named "Bowling Green Recycling of Lauren County," and the records of the Kentucky Secretary of State reflect no such entity in the Commonwealth of Kentucky. (Defs.' Suppl. Br. 1-2, DN 59).

1.   *Statute of Limitations*

Under KRS 413.125, "[a]n action for the taking, detaining or injuring of personal property, including an action for specific recovery shall be commenced within two (2) years from the time the cause of action accrued." Defendants correctly note that KRS 413.125 applies to claims of conversion and, in this context, negligence. *Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 932 (W.D. Ky. 2011) (citations omitted); *Rich & Rich P'ship v. Poetman Records USA, Inc.*, 714 F. Supp. 2d 657, 669 (E.D. Ky. 2010); *Dennis Anderson Park Lake Apts., LLC v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, No. 2012-CA-000288-MR, 2014 Ky. App. Unpub. LEXIS 822, at *8-14 (Ky. App. Oct. 17, 2014); *Holloway v. Alexander*, 2005 Ky. App. LEXIS 156, at *1-8 (Ky. App. 2005). Under KRS 413.120, actions for unjust enrichment must be brought within five years. *Sparacino v. Shepherd Communs., Inc.*, 2015 U.S. Dist. LEXIS 17050, at *18-19 (W.D. Ky. 2015) (citations omitted).

Where conversion has taken place by way of a wrongful taking, the accrual date for the statute of limitations is set based on the discovery rule, which provides that a cause of action accrues when the injury is, or should have been with the exercise of reasonable diligence, discovered. *Madison Capital*, 765 F. Supp. 2d at 932-33 (citations omitted); *State Farm Mut. Auto. Ins. Co. v. Newburg Chiropractic, P.S.C.*, 683 F. Supp. 2d 502, 506 (W.D. Ky. 2010). The discovery rule also applies to actions for unjust enrichment and negligence, in this context. KRS 413.130(3); *see Dennis Anderson*, 2014 Ky. App. Unpub. LEXIS 822, at *11-12. Kentucky courts define "reasonable diligence" for purposes of the discovery rule as meaning "that a plaintiff must be as diligent as the great majority of persons would [be] in the same or similar circumstances . . . ." *R.T. Vanderbilt Co. v. Franklin*, 290 S.W.3d 654, 659 (Ky. App. 2009) (alteration in original) (internal quotation marks omitted) (citation omitted).

According to the Proof of Loss it submitted to National Union, Belden discovered the loss on February 25, 2014. (Pl.'s Mot. Summ. J. Ex. 3, at 1, DN 52-4). Plaintiff filed this action on February 24, 2015. (Compl., DN 1).

Defendants argue that "Belden failed to exercise any degree of diligence as it relates to protecting themselves from theft[,]" and therefore should have discovered the theft while it was taking place, in the period from 2004-14 Pruitt was engaging in the scheme. (Defs.' Mem. 5-6). Plaintiff notes, however, that its insured, Belden, did in fact conduct regular audits of its inventory, and a forensic accountant has testified that its recordkeeping practices complied with industry standards. (Pl.'s Resp. Defs.' Mot. Summ. J. 8-10, DN 54 [hereinafter Pl.'s Resp.]). "Under Kentucky law, the burden of proof when asserting an affirmative defense, like the statute of limitations, is on the party who raises it." *Hines v. Hiland*, No. 5:09-CV-00075-R, 2011 U.S. Dist. LEXIS 32616, at \*7 (W.D. Ky. Mar. 25, 2011) (citation omitted). Defendants have made only bare allegations regarding when Belden should have discovered the theft. By contrast, Plaintiff cites evidence in the record establishing actual discovery within one year of filing, and reasonable diligence on the part of its insured. In the absence of citation to countervailing proof, Defendants' argument regarding the statute of limitations is rejected. *See Casey Wasserman Living Tr. under Declaration of Tr. Dated June 29, 1999 v. Bowers*, No. 5:09-CV-180-JMH, 2010 WL 3735721, at \*2 (E.D. Ky. Sept. 20, 2010) ("The Court, however, does not have a duty to scour the record for evidence of a genuine issue of material fact and the 'nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" (quoting *Poss v. Morris*, 260 F.3d 654, 665 (6th Cir. 2001))).

### 2. *Unjust Enrichment Claim Merits*

In Kentucky, a plaintiff asserting a claim of unjust enrichment "must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009) (citation omitted). Defendants argue that, as "innocent purchasers for value[,]" they are entitled to summary judgment as a matter of law as to Plaintiff's claim of unjust enrichment, which they aver is "founded solely on conjecture." (Defs.' Mem. 7-8 (citing *Guerin v. Fulkerson*, 354 S.W. 3d 161, 166 (Ky. App. 2011))). Plaintiff counters that it has developed "ample evidence to support its theory that Defendants engaged in fraud and colluded with Pruitt."[7] (Pl.'s Resp. 11). Defendants reply that each of Plaintiff's attempts to create a genuine issue of material fact is "speculative" and deficient in some way. (Defs.' Reply Pl.'s Resp. Defs.' Mot. Summ. J. 3-6, DN 57 [hereinafter "Defs.' Reply"]).

The Court finds that Plaintiff has raised a genuine dispute of material fact as to whether Defendants were, in fact "innocent purchasers for value," and therefore whether Defendants were unjustly enriched. The evidence highlighted by Plaintiff could cause a reasonable jury to return a verdict for Plaintiff. Therefore, Defendants' motion for summary judgment as to Plaintiff's claim of unjust enrichment will be denied.

---

[7] Plaintiffs note that this evidence includes that Defendants purchased copper from Pruitt without documentation of his purported authority to do so, that "Defendants repeatedly agreed to purchase brand new, production-ready reels of copper as scrap," and that "Defendants did not pay Pruitt directly, but instead issued payment to his brothers, in amounts below $10,000 – enabling Defendants to avoid bank reporting requirements and enabling the scheme to continue longer without detection" (Pl.'s Resp. 11-16 (quoting Lofton Dep. 54:3-5, 59:13-60:1, 75:22-76:2, 76:22-77:7, 79:14-80:11, 89:9-90:7; Contorno Dep. 88:5-89:7, 91:3-92:4, Jan. 9, 2017, DN 54-1)).

3. *Negligence Claim Merits*

Under Kentucky law, a plaintiff alleging negligence must prove: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 133 S.W.3d 85, 88 (Ky. 2003) (citation omitted). "Consequent injury" reflects the two distinct elements of injury to the plaintiff that was caused by the defendant's breach. *Id.* at 88-89.

Defendants argue that, pursuant to the standard of care established by KRS 433.904(3),[8] it fulfilled its duty for those transactions occurring after July 12, 2012 to obtain "reasonable proof" in the form of the forged Certificates of Ownership Pruitt submitted. (Defs.' Mem. 8-10). As Plaintiff notes, however, the Certificates of Ownership named Belden, not Pruitt, as the owner of the copper. Plaintiff further points to Defendants' failure to comply with KRS 433.904(1) regarding payment for the copper, as well as the testimony of its forensic accountant stating that Defendants should not reasonably have relied on the documents provided, to establish questions of fact precluding Defendants' motion. (Pl.'s Resp. 17-18). The Court agrees that such evidence creates a genuine dispute of material fact.

Defendants' reply also raised for the first time that, for those transactions prior to the effect of KRS 433.904, its actions were governed by a common law duty of care and that it met this duty by "reasonably rel[ying] on the representations and apparent authority of Jimmy Pruitt." (Defs.' Reply 6-7). The Court agrees that the relevant standard for those transactions preceding the enactment of KRS 433.904 is that of common law negligence, which "requires proof that the

---

[8] KRS 433.904(3) provides, in relevant part:

> A secondary metals recycler shall not purchase any restricted metals without obtaining reasonable proof that the seller owns the property, such as a receipt or bill of sale, or reasonable proof that the seller is an employee . . . [of the] entity owning the property and that the seller is authorized to sell the item of restricted metal.

11

defendant knew or should have known that its conduct created a reasonable likelihood of injury." *CSX Transp., Inc. v. Moody*, 313 S.W.3d 72, 83 (Ky. 2010). Defendants' bare assertions that they "could not have reasonably foreseen that [their] conduct was injurious to Belden" and that they "reasonably relied on the representations and apparent authority of Jimmy Pruitt" does not meet Defendants' burden to identify evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 322.

For these reasons, Defendants are not entitled to judgment as a matter of law as argued in their motion. The Court will deny their motion.

## V. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (DN 52) is **GRANTED** as to Plaintiff's conversion claim. Plaintiff's damages are assessed jointly and severally in the amount of $1,935,272.15 against: (1) Defendants Bowling Green Recycling, LLC, (2) Bowling Green Recycling, Inc., (3) Bowling Green Recycling II, Inc., and (4) Bowling Green Recycling of Warren County, Inc., as successors-in-interest.

2. Defendants' Motion for Summary Judgment (DN 53) is **DENIED**.

3. Plaintiff's claims of unjust enrichment and negligence remain.

**Greg N. Stivers, Judge
United States District Court**
December 19, 2017

cc: counsel of record